FILED
RICHARD W. NAGEL
CLERK OF COURT

2016 SEP -7 PM 3: 34

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

UNITED STATES OF AMERICA,          :
    Plaintiff,                        :
                                 :          Case No.
    vs.                               :          Judge
                                   :
MALEK JALAL,                        :
    Defendant.                        :

**2 : 16 cr 180**

Judge Graham

### FACTUAL BASIS

Defendant MALEK JALAL agrees that the foregoing is a true and accurate summary of his conduct:

1. Defendant MALEK JALAL formerly served as a managing partner and co-owner of Unity Fuels d/b/a/ Grease Lightning ("Unity"). JALAL handled purchases, sales, marketing, and other aspects of Unity's business. JALAL left Unity in or about September 2014, although he retained an ownership interest.

2. Co-Owner A was formerly a managing partner and co-owner of Unity. Co-Owner A managed the technological portions of the business. Co-Owner A left Unity in or about September 2014, although he retained an ownership interest.

3. Defendant MALEK JALAL and Co-Owner A hired William Letona in early 2011 to assist with Unity's business development. Letona was later put in charge of managing day-to-day operations at Unity's facility. In this capacity, Letona oversaw inbound and outbound transportation of material to and from Unity.

4. Unity's primary business was to collect used cooking oil, process it using heat, a centrifuge, and filters, and sell it as "recycled vegetable oil" (RVO). Unity primarily sold RVO as a feedstock for biodiesel production.

5.    Unity formerly had a facility in Newark, New Jersey, before moving to Hicksville, New York, and Ridgefield Park, New Jersey.

6.    In or about June 2011, Unity began selling RVO to a New York-based company ("Company A") operated by Person B

7.    No later than September 2011, Defendant MALEK JALAL agreed with Co-conspirator A to purchase a material called "biomass" from Company A.

8.    On or about September 30, 2011, Unity began receiving loads of the "biomass" from Company A. Unity's receipt of biomass was negotiated between Co-conspirator A and MALEK JALAL. Invoices from Company A to Unity referred to the material as "Rinless B99 biomass HO Blend Stock" or "Rinless HO Blend Stock."

    a.    Defendant MALEK JALAL understood that the term "Rinless" referred to EPA Renewable Identification Numbers (or "RINs") which are marketable credits associated with renewable fuels. Defendant JALAL further understood that the term "Rinless" signified that RINs had already been generated on, and separated from, the biomass material, and that additional RINs could not be generated on this material.

    b.    Defendant MALEK JALAL understood that the term "B99" signified that the material had been blended with a small amount of petroleum-based fuel for purposes of claiming a $1 per gallon tax credit. Defendant MALEK JALAL further understood that additional tax credits could not be claimed on this material.

9.    At Defendant MALEK JALAL's direction, the biomass received from Company A was not processed and was kept in separate tanks at Unity.

10.    Defendant MALEK JALAL and Co-conspirator A agreed that the biomass Unity

received from Company A would be sold back (either neat or blended with other product that Unity had on hand) to Company A as feedstock.

11. Pursuant to this agreement, Defendant MALEK JALAL directed Unity employees to send the biomass (either neat or blended) back to Company A (or another New York entity operated by Co-conspirator A, "Company B"). At Defendant MALEK JALAL's direction, whenever the biomass was sent back to Company A or Company B, it was called Recycled Vegetable Oil Blend, RVO-Blend, or RVOB.

12. Unity profited from this arrangement because Co-conspirator A charged Unity less for the biomass than Company A paid Unity when purchasing the material back as RVOB.

13. Defendant MALEK JALAL understood that Company A had arranged for RIN credits to be generated and tax credits to be claimed on the biomass.

14. Defendant MALEK JALAL understood that Unity was relabeling the biomass as RVOB to enable it to be reprocessed into fuel and thereby generate additional RINs and tax credits on the same material.

15. Unity ceased purchasing the biomass from Company A in or about May 2012.

16. On or about June 17, 2014, a subpoena *duces tecum* dated June 10, 2014 (no. 66) issued by a federal Grand Jury sitting in the Southern District of Ohio to Unity Fuels was served on Defendant MALEK JALAL.

17. Defendant MALEK JALAL was interviewed by government agents on this date. During his interview, JALAL falsely represented that the biomass Unity received had been biodiesel, and that all of it had been sold or else used internally at Unity.

18. After his interview, Defendant MALEK JALAL and Co-Owner A went to a library to use the internet. There, they logged into Unity's Quickbooks account and created a

new user: "mlklfl@yahoo.com." Once the new user was created, Defendant MALEK JALAL and Co-Owner A altered numerous records in an effort to hide the fact that biomass purchased from Company A had been sent back to Company A.

19.     Following the receipt of the subpoena, Defendant MALEK JALAL met with Co-Owner A and William Letona to discuss Unity's subpoena response. Defendant MALEK JALAL told Letona to collect records for Unity's subpoena production. Defendant MALEK JALAL told Letona that the records could not show biomass going back to Company A.

20.     Defendant MALEK JALAL instructed Letona to only provide those records that corresponded with Unity's bank statements. Defendant MALEK JALAL understood that his directive caused many documents that were responsive to the subpoena not to be turned over to the Grand Jury.[1]

21.     Using the bank statements, William Letona prepared false spreadsheets, purportedly documenting all of Unity's purchases and sales with Company A. Defendant MALEK JALAL knew that these spreadsheets were false, as they omitted substantial quantities of biomass and RVOB exchanged yet he caused them to be provided to the Grand Jury in response to the Grand Jury subpoena.

22.     Defendant MALEK JALAL also directed William Letona to change documents that originally showed sales of biodiesel to a Canadian company in September 2011 (before Unity bought biomass from Company A) to make it appear as though the sales occurred in October 2011 (after Unity began buying biomass from Company A). The altered documents included approximately 29 scale tickets and approximately 29 bills of lading. Defendant

---

[1] For a period of time, Unity used a "barter" with Company A. Under their "barter" agreement, only money representing the difference in value between incoming and outgoing loads would be paid. As a result, during the existence of the "barter," the bank records only documented a small portion of the total volume of material exchanged between Unity and Company A.

MALEK JALAL caused these altered documents to be provided to the Grand Jury in response to the Grand Jury subpoena.

23. William Letona and Co-Owner A created a false document suggesting biomass was used internally for process heat. Defendant MALEK JALAL's inquired as to whether the document could be altered to show even more biomass being used internally for process heat. In response, Letona and Co-Owner A altered the document to increase the amount of biomass purportedly being used internally for process heat. In addition, Defendant MALEK JALAL also ordered the creation of a false document suggesting biomass was used to clean out Unity's tanks. Defendant MALEK JALAL, William Letona, and Co-owner A caused these false documents to be provided to the Grand Jury in response to the Grand Jury subpoena.

24. While preparing Unity's subpoena response, Defendant MALEK JALAL threw records he knew to be responsive to the subpoena into the trash. Defendant MALEK JALAL also deleted emails between he and Company A.

8/1/16
DATE

MALEK JALAL
Defendant

8/19/16
DATE

ALLEN DALE
Attorney for Defendant JALAL

8/19/16
DATE

ROBERT SPAGNOLETTI
Attorney for Defendant JALAL

JOHN C. CRUDEN
ASSISTANT ATTORNEY GENERAL

9/6/16
DATE

ADAM C. CULLMAN (KY #93912)
Trial Attorney

9/6/2016
DATE

JEREMY F. KORZENIK
Senior Trial Attorney

BENJAMIN C. GLASSMAN
UNITED STATES ATTORNEY

9/7/16
DATE

J. MICHAEL MAROUS (0015322)
Assistant United States Attorney